# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### JANUARY SESSION, 1998

FILED

January 15, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 02C01-9703-CC-00122 |
| Appellee | ) | |
| | ) | HARDIN COUNTY |
| vs. | ) | |
| | ) | Hon. C. Creed McGinley, Judge |
| ROBERT ZANDI, | ) | |
| | ) | (Second Degree Murder) |
| Appellant | ) | |

For the Appellant:

**Richard W. DeBerry**
Asst. District Public Defender
P. O. Box 663
Camden, TN 38320


**Guy T. Wilkinson**
District Public Defender

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Janis L. Turner**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493


**G. Robert Radford**
District Attorney General

**John Overton**
Asst. District Attorney General
Hardin County Courthouse
Savannah, TN 38372


OPINION FILED: _____

AFFIRMED


**David G. Hayes**
Judge

## OPINION

The appellant, Robert Zandi, appeals his conviction for second degree murder following a jury trial in the Hardin County Circuit Court.[1]  On appeal, he contends that the evidence was insufficient to convict him of this offense.

After a review of the record, we affirm the judgment of the trial court.

## Background

Shortly after midnight on December 14, 1995, Virginia Hamm was awakened by three gunshots from outside her mobile home.  Looking outside her window, she observed the appellant "hollering" and "cussing" at William "Andy" Hamm and Bobby Plunk.  Virginia and Andy Hamm were married, however, they had separated and were living in separate mobile homes located on adjacent lots.  The appellant resided with his mother, Virginia Hamm.  Johnny Gilmore, who was staying with Andy Hamm, also heard the gunshots.  Moments later, Gilmore observed the appellant carrying a rifle "hollering and fussing and carrying on."  He then heard the appellant state that he was going to kill "Andy [Hamm] and Bobby [Plunk]."  With the victim following, the appellant then returned to his mother's residence.  Inside, Hamm told his wife that "Robert is going to have to leave because I can't have any friends because of him."  The appellant asked his mother if she agreed with Andy and she replied that she did.  Without hesitation, the appellant, who was in possession of the rifle, fired one shot, striking the victim in the chest.[2]  The bullet, fired from an approximate distance of eight feet, entered the appellant's chest, traversing the lungs, aorta and spinal cord.  Frantically, Ms. Hamm attempted to

---

[1]The appellant was indicted for premeditated first degree murder.

[2]The rifle was identified as a 7.62 caliber, Norinco Arms, SKS assault rifle.

telephone "911." However, her efforts were thwarted when the appellant pulled the telephone line from the wall. The appellant, at this point, grabbed a .22 pistol and fled the scene in his 1982 Pontiac Firebird. He was finally apprehended on May 1, 1996, when an officer with the Illinois Commerce Commission Police in Rock Island, Illinois, stopped a commercial moving van for various violations relating to federal and state interstate commerce regulations.

The appellant testified in his own defense at trial. His testimony revealed a rather unconventional familial relationship. In 1967, August and Virginia Zandi adopted the appellant, who was six years old. In 1976, Andy Hamm, who was sixteen years old, came to live in the Zandi household as a foster child. The appellant was fourteen years old at this time. Sometime thereafter, the relationship between Virginia Zandi and Andy Hamm became sexual. When Andy Hamm was eighteen years old, the two "cleaned out" the Zandi's bank account and left town. In 1981, when the victim was twenty-one years old and Ms. Hamm was thirty-eight, they were married. Because of his mother's affair with Hamm, the appellant refused to speak with his mother for approximately twelve years after their marriage. However, at the time of the murder, the appellant had "come to an understanding" with his mother and had been residing, on and off, with her for three years. Virginia Hamm testified that the appellant had never accepted Hamm.

The appellant testified that the initial reason for the encounter between himself and the victim was because Andy and Bobby were working on a truck and making too much noise. He stated that it was after midnight and "Plunk had held the throttle down for, I know, at least ten minutes, just flooring it" and he couldn't sleep. He related, however, that what he was really upset about was the death of his father, August Zandi, on September 30, his recent job lay-off on August 30, and "the last twenty years." In acknowledging his actions, he explained, "I just blew up and I lost control and I shot him."

3

Based upon this evidence, the jury convicted the appellant of second degree murder.

## I. Sufficiency of the Evidence

In his only issue, the appellant contends that the evidence is insufficient, as a matter of law, to support a conviction for second degree murder. However, he concedes that the proof establishes that he is guilty of voluntary manslaughter. The trial court charged the jury on both offenses and the jury found the appellant guilty of second degree murder.

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are solved by the trier of fact, not this court. Cabbage, 571 S.W.2d at 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

4

A defendant challenging the sufficiency of the proof has the burden of illustrating to this court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In this case, the appellant was convicted of second degree murder or the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1) (1995 Supp.). He argues that the evidence supports only voluntary manslaughter which is defined as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a)(1991).

When the evidence is conflicting, the jury must resolve these conflicts, under proper instructions, and decide whether the homicide is murder or manslaughter. Thus, in this case, it was for the jury to determine whether the killing of Andy Hamm by the appellant occurred in a state of passion produced by provocation from the "last twenty years" or whether the appellant simply meant to violently end a long-standing hostility. The jury found the latter and the trial judge approved this verdict. We agree. The record establishes, beyond a reasonable doubt, that the appellant (a) unlawfully killed the victim and (b) did so knowingly.

Accordingly, we conclude, as a matter of law, that the evidence is sufficient to support a finding by the jury that the appellant is guilty of second degree murder. Tenn. R. App. P. 13(e).

5

The judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JOE B. JONES, Presiding Judge

_____
JOE G. RILEY, Judge